# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| MODE TRANSPORTATION, LLC, | Case No.: |
| Plaintiff, | |
| v. | **COMPLAINT** |
| CAPITAL LOGISTICS & WAREHOUSING GROUP INC., CAPITAL LOGISTICS SERVICES INC., CAPITAL LOGISTICS & WAREHOUSING EAST INC., CAPITAL LOGISTICS & WAREHOUSING WEST INC., CAPITAL FREIGHT SYSTEMS INC., CAPITAL LOGISTICS FREIGHT SERVICES INC., CAPITAL LOGISTICS SERVICES WEST INC., CAPITAL LOGISTICS SERVICES EAST INC., CAPITAL LOGISTICS SERVICES SOUTH INC., CAPITAL WAREHOUSING SERVICES INC., CAPITAL PERFORMANCE GROUP EAST INC., CAPITAL PERFORMANCE GROUP SOUTH INC., CAPITAL PERFORMANCE GROUP WEST INC., CAPITAL PERFORMANCE FREIGHT SERVICES INC., CAPITAL PERFORMANCE SERVICES INC., PAUL GREENSPAN, SUNIL DHANRAJ, MARTIN J. LINKLETTER, ABC CORPORATIONS, the fictitious names of entities whose present identity is not known, and John Does 1-5, the fictitious names of individuals whose present identity is not known, | |
| Defendants. | |

Plaintiff, MODE Transportation, LLC ("MODE"), by and through its undersigned attorneys, as and for its Complaint against defendants, Capital Logistics & Warehousing Group Inc. ("CLWG"), Capital Logistics Services Inc. ("CLS"), Capital Logistics & Warehousing East Inc. ("CLWE"), Capital Logistics & Warehousing West Inc. ("CLWW"), Capital Freight Systems Inc. ("CFS"), Capital Logistics Freight Services Inc. ("CLFS"), Capital Logistics Services West Inc. ("CLSW"), Capital Logistics Services East Inc. ("CLSE"), Capital Logistics Services South

Inc. ("CLSS"), Capital Warehousing Services Inc. ("CWS"), Capital Performance Group East Inc. ("CPGE"), Capital Performance Group South Inc. ("CPGS"), Capital Performance Group West Inc. ("CPGW"), Capital Performance Freight Services Inc. ("CPFS"), Capital Performance Services Inc. ("CPS"), Paul Greenspan ("Greenspan"), Sunil Dhanraj ("Dhanraj"), Martin J. Linkletter ("Linkletter"), ABC Corporations 1-10 ("ABC"), and John Does 1-5 ("Doe"),  alleges upon information and belief as follows:

## JURISDICTION AND VENUE

1.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(2) as there is complete diversity of citizenship between the parties and the matter in controversy exceeds $75,000.00, exclusive of interest and costs.

2.      Venue is proper pursuant to 28 U.S.C. § 1391 as defendants are residents of this District; a substantial part of the events or omissions giving rise to the claims occurred in this District; and/or defendants are subject to the personal jurisdiction of this Honorable Court.

## THE PARTIES

3.      Plaintiff, MODE, was and now is a limited liability company organized and existing under the laws of the State of Delaware with an office and principal place of business at 14785 Preston Road, Suite 850, Dallas, Texas.

4.      Defendant, CLWG, was and now is a corporation organized and existing under the laws of the State of New Jersey with an office and principal place of business at 1 Passaic Ave, Wood-Ridge, New Jersey 07075.

5.      Defendant, CLS, was and now is a corporation organized and existing under the laws of the State of New Jersey with an office and principal place of business at 1 Passaic Ave, Wood-Ridge, New Jersey 07075.

6.      Defendant, CLWE, was and now is a corporation organized and existing under the laws of the State of New Jersey with an office and principal place of business at 1 Passaic Ave, Wood-Ridge, New Jersey 07075.

7.      Defendant, CLWW, was and now is a corporation organized and existing under the laws of the State of California with an office and principal place of business at 1 Passaic Ave, Wood-Ridge, New Jersey 07075.

8.      Defendant, CFS, was and now is a corporation organized and existing under the laws of the State of California with an office and place of business at 1 Passaic Ave, Wood-Ridge, New Jersey 07075 and an office and principal place of business at 20943 S Maciel Avenue, Carson, California 90810.

9.      Defendant, CLFS, was and now is a corporation organized and existing under the laws of the State of California with an office and place of business at 1 Passaic Ave, Wood-Ridge, New Jersey 07075 and an office and principal place of business at 22000 Opportunity Way, Riverside, California 92518.

10.     Defendant, CLSW, was and now is a corporation organized and existing under the laws of the State of California with an office and place of business at 1 Passaic Ave, Wood-Ridge, New Jersey 07075 and an office and principal place of business at 22000 Opportunity Way, Riverside, California 92518.

11.     Defendant, CLSE, was and now is a corporation organized and existing under the laws of the State of New Jersey with an office and principal place of business at 1 Passaic Ave, Wood-Ridge, New Jersey 07075.

12.     Defendant, CLSS, was and now is a corporation organized and existing under the laws of the State of Florida with an office and place of business at 1 Passaic Ave, Wood-Ridge,

New Jersey 07075 and an office and principal place of business at 9175 NW 117th Ave, Flagler Station II, Building 38, Medley, Florida 33178.

13.     Defendant, CWS, was and now is a corporation organized and existing under the laws of the State of New Jersey with an office and principal place of business at 1 Passaic Ave, Wood-Ridge, New Jersey 07075.

14.     Defendant, CPGE, was and now is a corporation organized and existing under the laws of the State of New Jersey with an office and principal place of business at 1 Passaic Ave, Wood-Ridge, New Jersey 07075.

15.     Defendant, CPGS, was and now is a corporation organized and existing under the laws of the State of Florida with an office and place of business at 1 Passaic Ave, Wood-Ridge, New Jersey 07075 and an office and principal place of business at 9175 NW 117th Ave, Flagler Station II, Building 38, Medley, Florida 33178.

16.     Defendant, CPGW, was and now is a corporation organized and existing under the laws of the State of California with an office and place of business at 1 Passaic Ave, Wood-Ridge, New Jersey 07075 and an office and principal place of business at 525 West Manville Street, Compton, California 90220.

17.     Defendant, CPFS, was and now is a corporation organized and existing under the laws of the State of California with an office and place of business at 1 Passaic Ave, Wood-Ridge, New Jersey 07075 and an office and principal place of business at 525 West Manville Street, Compton, California 90220.

18.     Defendant, CPS, was and now is a corporation organized and existing under the laws of the State of New Jersey with an office and principal place of business at 1 Passaic Ave, Wood-Ridge, New Jersey 07075.

19.     Defendant, Greenspan, is an individual residing at 34 Stonehill Drive, Manhasset, New York 11030.

20.     Defendant, Dhanraj, is an individual residing at 1402 East Cartagena Street, Long Beach, California 90807.

21.     Defendant, Linkletter, is an individual residing at 12 Cold Hill Rd, Morris Plains, New Jersey 07950.

22.     Defendants, ABC, are fictitious corporate entities that may be liable to MODE, in whole or in part, for the damages set forth herein, but who are currently unknown to MODE.

23.     Defendants, Doe, are fictitious individuals that may be liable to MODE, in whole or in part, for the damages set forth herein, but who are currently unknown to MODE.

24.     Defendants, CLWG, CLS, CLWE, CLWW, CFS, CLFS, CLSW, CLSE, CLSS, CWS, CPGE, CPGS, CPGW, CPFS, CPS, and ABC (collectively the "Alter Ego Entities"), are alter egos of each other.

25.     The Alter Ego Entities operated as alter egos of defendants, Greenspan, Dhanraj, Linkletter, and Doe (collectively the "Alter Ego Individuals").

## FACTUAL BACKGROUND

### I.     MODE'S SERVICES

26.     MODE was and now is a company that arranges freight transportation services.

27.     In 2021 and 2022, MODE had been engaged by CLWG to arrange transportation of freight between California and New Jersey (the "Shipments").

28.     For the benefit of CLWG, MODE arranged transportation through motor carriers (the "carriers") for each of the Shipments for certain consideration.

29.    MODE and the carriers performed all duties and obligations (the "Services") for these Shipments.

30.    MODE issued payment to the carriers for the services performed for each of the Shipments.

31.    MODE demanded payment from CLWG for the Services performed for each of the Shipments. True and accurate copies of the invoices for the Services performed for the Shipments are attached hereto as *Exhibit A*.

32.    CLWG received the benefit of the Services performed for the Shipments but has failed and refused to pay for these Services.

## II.    ALTER EGO

### BANKRUPTCY AND THE SUBSEQUENT FORMATION OF NEW ENTITIES

33.    On May 19 – 22, 2014, (i) Universal Logistics Group Inc., (ii) Enterprise Distribution Corporation, (iii) Universal Distributions Services Inc., (iv) Universal Logistics Group East Inc., (v) Universal Logistics Group West Inc., and (vi) Pyramid Solutions Group Inc. (collectively, the "Debtors"), filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code (collectively, the "Bankruptcy Actions").

34.    Each of the Debtors had been formed by Greenspan to provide logistics services.

35.    On May 13, 2014, shortly before the commencement of the Bankruptcy Actions, Dhanraj formed Detailed Warehousing & Logistics Group West ("DWLGW").

36.    On September 22, 2014, following commencement of the Bankruptcy Actions, Dhanraj formed CLWG to replace one or more of the Debtors.

37.    On December 17, 2014, the Bankruptcy Actions were converted from Chapter 11 to Chapter 7 of the Bankruptcy Code.

38.    While the proceedings in the Bankruptcy Actions continued, on April 11, 2016, Greenspan formed Capital Warehousing & Distribution Company ("CWD").

39.    A few days later, on April 16, 2016, Greenspan formed CLS.

40.    On May 20, 2016, the Trustee for the Bankruptcy Actions filed a *Complaint to Avoid and Recover Transfers*[1].

41.    The Trustee also filed a *First Amended Complaint to Avoid and Recover Transfers* in an adversary proceeding[2] against Greenspan, Dhanraj, DWLGW, CWD, and CLWG.

42.    Both the *Complaint to Avoid and Recover Transfers* and the *First Amended Complaint to Avoid and Recover Transfers* allege that:

    (i)    Defendants Greenspan and Dhanraj set up the defendant entities to divert the assets and business of the Debtors.

    (ii)    Prior to the Petition Date, the Debtors transferred $588,000 and other unknown sums to Dhanraj for the purpose of establishing one or more of the defendant entities.

    (iii)    Before and after the Petition Date, the Defendants diverted property of the Debtors and the Debtors customers to the defendant entities for the benefit of the defendants.

    (iv)    The Defendants have utilized the assets of the Debtor for their own business, including, but not limited to, the collection of accounts receivable which belong to the Debtors, the transfer of inventory being warehoused by the Debtors for customers of the Debtors to the new business locations, the provision of the same services as offered by the debtors and the employment of Debtors' key personnel and other employees.

43.    On November 1, 2016,  Greenspan formed CLW West Logistics Inc. ("CLW WL") to replace one or more of the Debtors.

44.    On August 22, 2017, shortly before the filing of a *Notice of the Proposed Compromise* for the adversary proceeding, Greenspan formed CLWE.

---

[1] United States Bankruptcy Court District of New Jersey, Case No. 14-20406.

[2] United States Bankruptcy Court District of New Jersey, Case No. 14-20406, Adversary Proceeding No. 16-01361.

45.     On September 12, 2017, the *Notice of the Proposed Compromise* for the adversary proceeding was filed.

46.     On the following day, on September 13, 2017, Greenspan formed CLWW.

47.     On December 14, 2017, Greenspan formed CFS.

48.     On December 20, 2017, Greenspan formed CLWS.

49.     Like the Debtors, these companies had been formed to provide logistics services for the transport and storage of goods from the west coast to the east coast, which involved the pickup and transport of their customers' goods from the customers' facility to their facility located in California, where they would remain in storage until they arranged transportation of their customers' goods from their California facility to one of their facilities located in New Jersey or Florida through the use of freight brokers, such as MODE, and from there, the goods remained until they could be delivered to its final destination (the "Logistics Services").

50.     By the beginning of 2018, to provide the Logistics Services, the Alter Ego Individuals had formed (i) two entities that were designated, or otherwise appeared, to provide trucking services in California, (ii) two entities that were designated, or otherwise appeared, to provide warehousing services in California, (iii) two entities designated, or otherwise appeared, to provide warehousing services in New Jersey, (iv) two entities that were designated, or otherwise appeared, to provide trucking services in New Jersey, and (v) an entity that was designated, or otherwise appeared, to provide warehousing services in Florida.

## THE FORMATION OF ADDITIONAL NEW ENTITIES

51.     Thereafter, when certain financial obligations, such as tax liens and judgments, were incurred and litigations were commenced, the  Alter Ego Individuals formed new entities and permitted existing entities to go defunct or appear to go defunct.

52.     For example, on November 21, 2019, after CLWG had been suspended from operating in California (but not from operating in New Jersey) because of unpaid taxes, CLFS was formed.

53.     On November 21, 2019, after CLW WL had also been suspended from operating in California because of unpaid taxes, CLSW was formed.

54.     On December 3, 2019, after CLWE had been sued in several alter ego suits and had tax liens asserted against it, CLSE was formed.

55.     On July 15, 2021, CLSS was formed so that there would be two entities designated, or otherwise appear, to provide warehousing services in Florida.

56.     On January 2, 2023, after CLWG had been sued in numerous suits, including a suit filed by MODE (the "Prior MODE Suit")[3], CWS was formed.

57.     On November 16, 2023, after CLSE had been sued in several alter ego suits and had tax liens asserted against it, CPGE was formed.

58.     On November 17, 2023, after CLWS's certificate of authority in New Jersey had been revoked in New Jersey, CPGS was formed.

59.     On November 17, 2023, after CLSW had been sued in several alter ego suits, CPGW was formed.

60.     On January 24, 2024, after CLFS had been sued in several suits, including alter ego suits, CPFS was formed.

61.     On April 2, 2025, after MODE filed a *First Amended Complaint* to add Greenspan and other entities, including CWS, as alter ego defendants, CPS was formed.

---

[3] The Prior MODE suit was filed on December 13, 2022, in the Superior Court of the New Jersey Law Division, Middlesex County, Docket No. MID-L-006188-22, which was subsequently dismissed without prejudice on November 21, 2025.

62.     These entities had been formed to maintain a façade of separate corporate existences. However, they were not treated as independent entities with separate personalities. Rather, the Alter Ego Entities were/are essentially one entity.

## THE SEPARATE EXISTENCE OF THE ENTITIES WAS A SHAM

63.     The unity of interest and ownership of the Alter Ego Entities was and is such that the separate personalities of each of the Alter Ego Entities never existed or ceased to exist.

64.     The Alter Ego Entities failed, and continue to fail, to observe corporate formalities by their overlapping directors, officers, shareholders, registered agents for service of process, business and office addresses and locations, operations, and customers and by employing or otherwise using the same key personnel and employees.

65.     More specifically, the principal address and/or mailing address for each of the Alter Ego Entities was and/or now is 1 Passaic Ave, Wood-Ridge, New Jersey 07075.

66.     Greenspan and Dhanraj were and/or now are the agent for service of process for the Alter Ego Entities.

67.     Greenspan was and/or now is the owner of each of the Alter Ego Entities, except for CLSW and CLWW, which were given by Greenspan to Dhanraj without any consideration.

68.     Greenspan was and/or now is the Director of each of the Alter Ego Entities.

69.     Greenspan was and/or now is the Chief Executive Officer, President, Vice President, and/or Secretary of each of the Alter Ego Entities.

70.     Greenspan was and/or now is the sole shareholder of all the Alter Ego Entities, except for CLSW and CLWW, which were given by Greenspan to Dhanraj without any consideration.

71. Dhanraj was and/or now is the owner of CLSW and CLWW, which were given to him by Greenspan without any consideration.

72. Dhanraj was the Director and Chief Executive Officer and Secretary for CLWG.

73. Dhanraj was and/or now is the Director of CPGW, CPFS, and CLWW.

74. Dhanraj was and/or now is the Secretary for CPGE, CLS, and Vice President for CFS.

75. Linkletter was and/or now is the Controller and Assistant Controller for each of the Alter Ego Entities.

76. Moe Yosef was and/or now is the Chief Financial Officer and Controller for each of the Alter Ego Entities.

77. Additionally, the Alter Ego Entities have and continue to have the same customers and/or provide the same Logistics Services.

78. Each of the Alter Ego Entities also uses the same website, www.clwgroupinc.com, to advertise and market its services.

79. The website, www.clwgroupinc.com, does not identify any of the Alter Ego Entities, nor differentiate any of them from each other. Rather, the same locations and phone numbers are advertised, marketed, and/or otherwise represented for each of the Alter Ego Entities.

80. Additionally, the website, www.clwgroupinc.com, contains only one contact email, which is sales@clwgroupinc.com, and each of the Alter Ego Entities uses the same email domain, clwgroupinc.com.

81. Further, the Alter Ego Entities failed to observe corporate formalities by commingling funds.

82.     More specifically, the Alter Ego Entities paid, without any consideration, the obligations of one entity with the funds of another entity.

83.     For example, even though MODE provided services for CLWG, payments for those services were not made by CLWG. Instead, MODE received payments from CFS, CLFS, CLSE, and CLSW for those services

84.     Also, just last year, payments were made by CPS and CLS to resolve financial obligations of  CLSE and CWS.

85.     Additionally, Michael O'Neill was and/or now is an employee of CFS. However, his wages were/are not paid by CFS, but rather, by CLWG.

86.     Linkletter as the Controller or Assistant Controller and Yosef as the Chief Financial Officer or Controller were/are only paid by one entity, even though they perform work for each of the Alter Ego Entities.

87.     Also, intercompany loans were continuously made between the Alter Ego Entities. However, there were no agreements, nor any consideration, between the Alter Ego Entities for these loans.

88.     Additionally, each of the Alter Ego Entities share the same insurance policies.

89.     Further, none of the Alter Ego Entities maintain any by laws, meeting records, or resolutions, nor have they made any dividend payments.

90.     Accordingly, each of the Alter Ego Entities have been and are structured to include common ownership and control by Greenspan and Dhanraj; shared corporate officers, directors, and employees; common business addresses and operational facilities; intermingled finances, bank accounts, and business operations; and a unified decision-making structure directed by Greenspan, Dhanraj, and Linkletter.

91.     In other words, the Alter Ego Entities have been and are essentially one entity so dominated and controlled by the Alter Ego Individuals that the separate personalities of the Alter Ego Entities and the Alter Ego Individuals never existed or ceased to exist.

## THE EXISTENCE OF THE ALTER EGO
## ENTITIES WAS A SHAM TO PERPETRATE FRAUD

92.     The Alter Ego Individuals implemented and maintained a fraudulent scheme, where they coordinated the formation and dissolution of corporate entities timed to evade specific financial obligations.

93.     This fraudulent scheme included the formation and/or maintenance of at least (i) two entities that were designated, or otherwise appeared, to provide trucking services in California, (ii) two entities that were designated, or otherwise appeared, to provide warehousing services in California, (iii) two entities that were designated, or otherwise appeared, to provide warehousing services in New Jersey, (iv) two entities that were designated, or otherwise appeared, to provide trucking services in New Jersey, and (v) two entities that were designated, or otherwise appeared, to provide warehousing services in Florida.

94.     At least two entities were maintained so that (i) an alter ego entity could be shut down, or appear to be shut down, without interrupting the Logistic Services' operations and (ii) for the systematic transfer of assets from the defunct, or soon to be defunct, entity to place them beyond the reach of creditors and litigation.

95.     More specifically, if an alter ego entity was to be shut down, the other remaining alter ego entity could then be used to provide Logistics Services. With the formation of another alter ego entity or revival of a prior alter ego entity to replace the defunct, or soon to be defunct, entity, the assets of the defunct, or soon to be defunct, entity were transferred to place them beyond the reach of creditors and litigation.

96.     This fraudulent scheme was used to evade numerous financial obligations of the Alter Ego Entities.

97.     For example, the only New Jersey tax liens satisfied by the alter ego entities were those that had also been entered against Greenspan. Entities with New Jersey tax liens that had not been entered against Greenspan were shut down and new entities were formed to replace those entities.

98.     Also, prior to the suspension of CFS by the California Franchise Tax Board, funds were transferred out of CFS's bank account and then closed. CPFS was then formed approximately two weeks later, on January 24, 2024.

99.     Also, in 2023, (i) Greenspan, Dhanraj, CLWW, CLSW, CLFS had been defending an alter ego suit asserted against them by JCR Services, LLC for nonpayment of services; (ii) CLWG had been defending the Prior MODE Suit for nonpayment of services; (iii) CLWG, CLSE, and CLSW had been defending an alter ego suit asserted against them by Flexi-Van Leasing, LLC for nonpayment of services; and (iv) CLWG, CLSS, CLS, Greenspan, and Linkletter had been defending an alter ego suit asserted against them by Active Staffing Services for nonpayment of services. In early January 2024, funds were transferred out of six CLWG bank accounts and a CLS bank account and then those accounts were closed.

100.    The goal and purpose of the fraudulent scheme was to further the Alter Ego Individuals' personal interests.

101.    For example, in 2020, after commencement of the alter ego suit by JCR Services, LLC, to hinder, delay, and/or defraud JCR Services, LLC in that suit, Greenspan, without any consideration, gave ownership of CLWW to Dhanraj.

102.    Also, in 2022, CLSW filed an income tax return for the period of October 1, 2020 through September 30, 2021, that identifies a "loan to shareholder" in the amount of $2,118,500.00. That transfer, however, was not made to Dhanraj, the sole shareholder, but rather to Greenspan.

103.    Additionally, following commencement of the Prior MODE Suit against CLWG, on January 2, 2023,  CWS was formed. MODE then filed a *First Amended Complaint* that added Greenspan and other entities, including CWS, as alter ego defendants.  Thereafter, on April 2, 2025, CPS was then formed.

104.    Accordingly, the Alter Ego Individuals by virtue of their position as owners, officers, directors, and/or controlling employees of the Alter Ego Entities used the Alter Ego Entities to conduct, manage, and control the affairs of these entities as a part of their fraudulent scheme to evade financial obligations, including those owed to MODE, for their own personal interests.

105.    The Alter Ego Individuals so dominated and used the Alter Ego Entities as alter egos for their own personal interests that there was no meaningful or legal distinction between or among the Alter Ego Entities and the Alter Ego Individuals, such that the financial obligations of each Alter Ego Entity are the financial obligations of the other Alter Ego Entities and the Alter Ego Individuals, including the financial obligations owed to MODE.

106.    Because the Alter Ego Entities are merely a shell for which the Alter Ego Individuals used as a part of their fraudulent scheme to further their own personal interests, the Alter Ego Entities are a mere façade for the Alter Ego Individuals.

107.    Therefore, adherence to the fiction of the separate existence of the Alter Ego Entities and the Alter Ego Individuals, would sanction fraud and promote injustice in that MODE would be unable to realize upon any judgment in its favor.

108.    Accordingly, the foregoing alter ego allegations are hereby incorporated below within each cause of action, alleging liability against each of the Alter Ego Entities and the Alter Ego Individuals, except for Eighth and Ninth Causes of Action, which are pled in the alternative.

## FIRST CAUSE OF ACTION

### (Breach of Contract – Against All Defendants)

109.    MODE repeats and re-alleges paragraphs 1 through 108 as if set forth at length herein.

110.    For each Shipment, MODE agreed to arrange transportation of that shipment and CLWG agreed to pay for the Services (the "Agreement").

111.    Pursuant to Agreement, CLWG agreed to pay for the Services performed for the Shipments.

112.    CLWG has failed to issue full payment to MODE for the Services performed for the Shipments, thereby breaching their agreement with MODE.

113.    MODE, for its part, performed all duties and obligations, which it was required to perform and observe.

114.    By reason of the premises, MODE has sustained damages, no part of which has been paid by CLWG, although duly demanded, which are presently estimated to be no less than $2,245,856.59 (not including interest).

115.    MODE is therefore entitled to recover all damages resulting from the wrongful conduct set forth herein, in an amount not less than $2,245,856.59, together with prejudgment

interest in an amount of 1.5% per month, post-judgment interest, attorneys' fees, and costs/expenses.

## SECOND CAUSE OF ACTION

### (Accounting – Against All Defendants)

116.    MODE repeats and re-alleges paragraphs 1 through 115 as if set forth at length herein.

117.    CLWG received and retained MODE's invoice statements without objection and within a reasonable period of time, giving rise to an account stated. A true and accurate copy of MODE's statement of account for the Shipments is attached hereto as *Exhibit B*.

118.    Between November 2021 and July 2022, CLWG incurred charges for the Shipments on said account in the amount of $2,245,856.59 (not including interest).

119.    By reason of the premises, MODE has sustained damages, no part of which has been paid by CLWG, although duly demanded, which are presently estimated to be no less than $2,245,856.59 (not including interest).

120.    MODE is therefore entitled to recover all damages resulting from the wrongful conduct set forth herein, in an amount not less than $2,245,856.59, together with prejudgment interest, post-judgment interest, attorneys' fees, and costs/expenses.

## THIRD CAUSE OF ACTION

### (Quantum Meruit – Against All Defendants)

121.    MODE repeats and re-alleges paragraphs 1 through 120 as if set forth at length herein and pleads this Third Cause of Action in the alternative to the First Cause of Action.

122.    For the benefit of CLWG, MODE and the carriers performed the Services for the Shipments in good faith with the expectation of payment for such Services.

17

123.    CLWG benefited from the Services performed for the Shipments, for which they knew payment was owed to MODE.

124.    MODE and the carriers provided the Services for the Shipments, which benefited CLWG, and thereafter MODE submitted invoices based upon the reasonable value of such Services.

125.    MODE, however, has not received full payment for the Services performed for the Shipments.

126.    By reason of the premises, MODE has sustained damages, no part of which has been paid by CLWG, although duly demanded, which are presently estimated to be no less than $2,245,856.59 (not including interest).

127.    MODE is therefore entitled to recover all damages resulting from the wrongful conduct set forth herein, in an amount not less than $2,245,856.59, together with prejudgment interest, post-judgment interest, attorneys' fees, and costs/expenses.

### **FOURTH CAUSE OF ACTION**

#### **(Unjust Enrichment – Against All Defendants)**

128.    MODE repeats and re-alleges paragraphs 1 through 127 as if set forth at length herein and pleads this Fourth Cause of Action in the alternative to the First Cause of Action.

129.    For the benefit of CLWG, MODE and carriers performed the Services for the Shipments in good faith with the expectation of payment for such Services.

130.    CLWG accepted these Services while it had been represented that payment would be remitted to MODE for such Services.

131.    MODE and the carriers by providing these Services for the Shipments conferred a benefit on CLWG.

132.     CLWG accepted and retained the benefits of the Services performed for the Shipments.

133.     Despite CLWG's knowledge of the benefit conferred on them and the fact that MODE expected payment for the reasonable value of such benefit, CLWG refused and failed to pay for these Services.

134.     Therefore, it is inequitable for CLWG to continue to retain said benefits without paying MODE for the reasonable value of the Services performed for the Shipments.

135.     CLWG has been unjustly enriched by its refusal and failure to pay for the Services for the Shipments at the expense of MODE.

136.     By reason of the premises, MODE has sustained damages, no part of which has been paid by CLWG, although duly demanded, which are presently estimated to be no less than $2,245,856.59 (not including interest).

137.     MODE is therefore entitled to recover all damages resulting from the wrongful conduct set forth herein, in an amount not less than $2,245,856.59, together with prejudgment interest, post-judgment interest, attorneys' fees, and costs/expenses.

## FIFTH CAUSE OF ACTION

### (Fraudulent Misrepresentation – Against All Defendants)

138.     MODE repeats and re-alleges paragraphs 1 through 137 as if set forth at length herein.

139.     Because CLWG failed to make payments for services rendered, MODE informed CLWG that it would stop providing services.

140.     To induce MODE to continue providing services, CLWG represented that it would make weekly payments of $100,000 to MODE so that it could catch up on its arrears.

141.     Weekly payments, however, were not made.

142.    When CLWG was confronted with its failure to make weekly payments, to induce MODE to continue providing services, CLWG, not only represented that it would make payments, knowing that it would not make those payments, but also represented that payments to MODE had already been made.

143.    To convince MODE that payments had already been made, CLWG forwarded wire transfer confirmations.

144.    However, unbeknownst to MODE, after forwarding the confirmations, CLWG cancelled the wire transfers.

145.    MODE relying on CLWG's representation that it would pay invoices and believing that wire transfers had already been made, continued to provide services for CLWG.

146.    Had CLWG not represented that payments would be made and that payments had already been made, MODE would have stopped providing services.

147.    Accordingly, CLWG made material representations concerning payment of invoices that it knew were false to induce MODE to continue providing services, where MODE reasonably relied on such representations, thereby enabling CLWG to obtain additional services without payment, thus resulting in damages in the amount of services provided in reliance on the fraudulent representations.

148.    By reason of the premises, MODE has sustained damages, no part of which has been paid by CLWG, although duly demanded, which are presently estimated to be no less than $2,245,856.59 (not including interest).

149.    MODE is therefore entitled to recover all damages resulting from the wrongful conduct set forth herein, in an amount not less than $2,245,856.59, together with punitive damages, prejudgment interest, post-judgment interest, attorneys' fees, and costs/expenses.

## SIXTH CAUSE OF ACTION

### (Fraudulent Conveyance Under N.J.S.A.25:2-25 – Against All Defendants)

150.    MODE repeats and re-alleges paragraphs 1 through 149 as if set forth at length herein.

151.    Transfers were made by CLWG to CWS and/or other Alter Ego Entities and/or the Alter Ego Individuals.

152.    These transfers were made when (i) MODE was a creditor of CLWG and (ii) the Alter Ego Entities and the Alter Ego Individuals were "insiders" within the meaning of N.J.S.A.25:2-22.

153.    These transfers were made with the actual intent to hinder, delay, and/or defraud MODE, which was a known creditor of CLWG.

154.    These transfers were made without MODE having received a reasonably equivalent value in exchange for the transfers.

155.    These transfers were made to CWS and/or the Alter Ego Entities and/or the Alter Ego Individuals because CLWG intended to incur, or believed or reasonably should have believed, that it would incur debts beyond CLWG's ability to pay for the claims asserted in the Prior MODE Action.

156.    Accordingly, these transfers were made to frustrate the collection of assets to pay for financial obligations of CLWG to MODE.

157.    As a result of these transfers CLWG does not have sufficient funds to satisfy MODE's claims.

158.    MODE is therefore entitled to recover all damages resulting from the wrongful conduct set forth herein, in an amount not less than $2,245,856.59, or in the alternative, declaring the fraudulent conveyances void and setting aside the fraudulent conveyances for judgment,

together with punitive damages, pre-judgement interest, post judgement interest, attorneys' fees, and costs/expenses.

## SEVENTH CAUSE OF ACTION

### (Fraudulent Conveyance Under N.J.S.A.25:2-27 – Against All Defendants)

159.    MODE repeats and re-alleges paragraphs 1 through 158 as if set forth at length herein.

160.    Transfers were made by CLWG to CWS and/or other Alter Ego Entities and/or Alter Ego Individuals.

161.    These transfers were made when (i) MODE was a creditor of CLWG and (ii) the Alter Ego Entities and the Alter Ego Individuals were "insiders" within the meaning of N.J.S.A.25:2-22.

162.    These transfers were made with the actual intent to hinder, delay, and/or defraud MODE, which was a known creditor of CLWG.

163.    These transfers were made without MODE having received a reasonably equivalent value in exchange for the transfers.

164.    These transfers were made without CLWG having received a reasonably equivalent value from CWS and/or other Alter Ego Entities and/or Alter Ego Individuals in exchange for the transfers.

165.    These transfers were made to CWS and/or other Alter Ego Entities and/or Alter Ego Individuals to render CLWG insolvent.

166.    CWS and/or other Alter Ego Entities and/or Alter Ego Individual knew, or had reasonable cause to believe, that CLWG would become insolvent.

167.    Accordingly, these transfers were made to frustrate the collection of assets to pay for financial obligations of CLWG to MODE.

168.    As a result of these transfers, CLWG does not have sufficient funds to satisfy MODE's claims.

169.    MODE is therefore entitled to recover all damages resulting from the wrongful conduct set forth herein, in an amount not less than $2,245,856.59, or in the alternative, declaring the fraudulent conveyances void and setting aside the fraudulent conveyances for judgment, together with punitive damages, pre-judgement interest, post judgement interest, attorneys' fees, and costs/expenses.

### EIGHTH CAUSE OF ACTION

### (Violation of RICO, 18 U.S.C. § 1962(c) – Against the RICO Defendants)

170.    MODE repeats and re-alleges paragraphs 1 through 169 as if set forth at length herein and pleads this Eighth Cause of Action in the alternative.

171.    As alleged herein, the Alter Ago Entities have been and are merely a shell for which the Alter Ego Individuals used as a part of their fraudulent scheme to further their own personal interests, and thus, were a mere façade for the Alter Ego Individuals.  Accordingly, the Alter Ego Entities operated as the alter ego of the Alter Ego Individuals. In the alternative, insofar as this Court determines the Alter Ego Entities did not operate as the alter ego of the Alter Ego Individuals, Greenspan, Dhanraj, Linkletter, and Doe violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*

172.    RICO provides a private civil action to recover treble damages for "any person injured in his business or property by reason of a violation of section 1962." 18 U.S.C. § 1964(c).

173.    Under 18 U.S.C. § 1962(c), it is unlawful "for any person employed by or associated with any enterprise . . . to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity."

174.    Defendants, Greenspan, Dhanraj, Linkletter, and Doe (the "RICO Defendants"), have been and are "persons" within the meaning of RICO, 18 U.S.C. § 1961(3), and are distinct from the Enterprise.

175.    Defendants, CLWG, CLS, CLWE, CLWW, CFS, CLFS, CLSW, CLSE, CLSS, CWS, CPGE, CPGS, CPGW, CPFS, CPS, and ABC, have been and are an association-in-fact enterprise within the meaning of RICO, 18 U.S.C. § 1961(4) (the "Enterprise"), that was and remains engaged in, and its activities of which affect, interstate commerce.

176.    The Enterprise is an ongoing organization that functions as a continuing unit with the common purpose of generating revenue by providing Logistics Services, which includes the transportation of goods in interstate commerce, while systematically evading creditors and defrauding parties through use of corporate shells and fraudulent misrepresentations.

177.    The Enterprise has an ascertainable structure separate and apart from the pattern of racketeering activity that includes common ownership and control by Greenspan and Dhanraj; shared corporate officers, directors, and employees; common business addresses and operational facilities; intermingled finances, bank accounts, and business operations; a unified decision-making structure directed by Greenspan, Dhanraj, and Linkletter; coordinated formation and dissolution of corporate entities timed to evade specific financial obligations; and systematic transfer of assets to place them beyond the reach of creditors and litigation.

178.    The Enterprise has existed continuously since at least 2014 and continues to exist, as evidenced by the formation of CPS in April 2025.

179.    The RICO Defendants conducted and participated, directly and indirectly, in the conduct of the Enterprise's affairs through a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(1) and 1961(5).

180. The pattern of racketeering activity consists of multiple predicate acts of wire fraud in violation of 18 U.S.C. § 1343.

181. On multiple occasions between 2021 and 2022, the RICO Defendants through the Enterprise devised and executed a scheme to defraud creditors, such as MODE, by transmitting, and causing to be transmitted, by means of wire communication in interstate commerce, materially false and fraudulent communications, including wire transfer confirmations.

182. For example, Greenspan and Linkletter sent interstate communications, representing that payments had been made along with wire transfer confirmations to convince MODE that payments for outstanding charges had been made. These interstate communications, including the wire transfer confirmations, were sent via electronic communication (email and/or electronic data interchange).

183. At the time these interstate communications had been transmitted, the RICO Defendants had no intention of making payments on outstanding charges, as evidenced by their cancellations of wire transfers following these communications.

184. The purpose of these interstate communications was to fraudulently induce MODE to continue providing services, *i.e.*, arranging the transportation of customers' goods through interstate commerce, to enable the Enterprise to obtain additional services without payment.

185. MODE reasonably relied on these interstate communications and continued to provide services, thereby suffering damages in the amount of the services provided in reliance on the fraudulent communications.

186. Because these interstate communications, including the wire transfer confirmations, were used in furtherance of its scheme, each transmission constitutes a separate predicate act of wire fraud in violation of 18 U.S.C. § 1343.

187.   Further, the pattern of racketeering activity also consists of multiple predicate acts of money laundering in violation of 18 U.S.C. §§ 1956 and/or 1957.

188.   The RICO Defendants engaged in financial transactions involving the proceeds of the wire fraud scheme, knowing that the proceeds had been derived from unlawful activities.

189.   More specifically, the RICO Defendants conducted, and caused to be conducted, financial transactions involving proceeds from the wire fraud scheme – namely, its retention of proceeds for services that were fraudulently obtained – with the intent to conceal and disguise the nature, location, source, ownership, and control of the proceeds from the unlawful activities.

190.   These fraudulent financial transactions involved a layering scheme that include, without limitation, (i) the transfer of $2,118,500 from CLSW to Greenspan in October 2020 – September 2021 that was falsely characterized as a "loan to shareholder" as Greenspan was not a shareholder of CLSW; (ii) the transfer of funds out of, and closure of, six CLWG bank accounts and a CLS bank account in early January 2024, which was done to place funds beyond the reach of at least four suits, (iii) the transfer of funds out of, and closure of, CFS's bank account along with the formation of CPFS on January 24, 2024, which was done to place CFS's funds beyond the reach of creditors prior to its suspension by the California Franchise Tax Board; and (iv) the commingling of funds among the Enterprise through intercompany transfers to obscure the source and ownership of assets since at least 2014.

191.   Each such financial transaction constitutes a separate predicate act of money laundering in violation of 18 U.S.C. §§ 1956 and/or 1957.

192.   Further, each of the predicate acts of racketeering activity are related to each other in that they share, or have, the same or similar (i) common goal and purpose to defraud creditors, such as MODE, as evidenced by the numerous suits filed for nonpayment of services; (ii) results,

where services are obtained without payment and creditor collection efforts are evaded; (iii) participants, *i.e.*, the RICO Defendants; (iv) victims, *i.e.*, creditors, such as MODE; and (v) methods of commission through use of corporate shells and fraudulent misrepresentations.

193.    Each of the predicate acts demonstrate continuity in that they (i) occurred over an extended period of time spanning from at least 2014 to the present; (ii) are part of the Enterprise's regular way of conducting business; (iii) pose a threat of continued criminal activity, as evidenced by the formation of CPS in April 2025 to continue the Enterprise's fraudulent scheme; and (iv) have targeted numerous similar victims, including MODE.

194.    Each of the RICO Defendants conducted or participated, directly or indirectly, in the conduct of the Enterprise's affairs through the pattern of racketeering activity by directing, controlling, approving, and/or aiding and abetting in the Enterprise's fraudulent scheme by, *inter alia*, (i) forming and dissolving corporate entities to evade creditors; (ii) authorizing and directing fraudulent wire communications; (iii) orchestrating the transfer of assets to place funds beyond the reach of creditors and litigation; (iv) commingling corporate funds and assets; and (v) directing the operations of the Enterprise as a unified enterprise.

195.    These acts, which continue through the present day and will continue into the future with no foreseeable ending, through continued further acts of wire fraud and/or money laundering, in violation of 18 U.S.C. § 1343, 18 U.S.C.A. § 1956, and/or 18 U.S.C.A. § 1957, have caused and will continue to cause irreparable damage to MODE and other creditors.

196.    Accordingly, as a direct and proximate result of the RICO Defendants' actions in violation of 18 U.S.C. § 1962(c), MODE has experienced injury and continues to be injured in an amount presently estimated to be no less than $2,245,856.59, which is due to be trebled in accordance with 18 U.S.C. § 1964.

197.    MODE is therefore entitled to recover all damages resulting from the wrongful conduct set forth herein, in an amount not less than $6,737,569.77, together with punitive damages, trebled prejudgment interest, post-judgment interest, attorneys' fees, and costs/expenses.

## NINTH CAUSE OF ACTION

**(Conspiracy to Violate RICO, 18 U.S.C. § 1962(d) – Against the RICO Defendants)**

198.    MODE repeats and re-alleges paragraphs 1 through 197 as if set forth at length herein.

199.    18 U.S.C. § 1962(d) makes it "unlawful to conspire to violate [18 U.S.C. § 1962(c)]," and thus, makes it unlawful to conspire to conduct the affairs of an enterprise through a pattern of racketeering activity.

200.    The RICO Defendants conspired, planned, schemed and agreed with each other to conduct the affairs of the Enterprise through a pattern of racketeering activity by committing multiple acts of wire fraud and money laundering in violation of 18 U.S.C. § 1962(c), and thereby violated 18 U.S.C. § 1962(d).

201.    In furtherance of the conspiracy, the RICO Defendants committed numerous overt acts, including, without limitation, those predicate acts of racketeering activity set forth herein.

202.    Each of the RICO Defendants knowingly and intentionally permitted and acquiesced in the conduct of the other RICO Defendants.

203.    Each of the RICO Defendants had knowledge of the overall purpose of the conspiracy, which was to systematically defraud creditors, and more specifically with MODE, to generate proceeds by arranging transportation of goods in interstate commerce through MODE without paying MODE for such services, through the use predicate acts of racketeering.

204.    As a direct and proximate result of the RICO Defendants' actions in violation of 18 U.S.C. §1962(d), MODE has experienced injury and continues to be injured in an amount presently

estimated to be no less than $2,245,856.59, which is due to be trebled in accordance with 18 U.S.C. § 1964.

205.    MODE is therefore entitled to recover all damages resulting from the wrongful conduct set forth herein, in an amount not less than $6,737,569.77, together with punitive damages, trebled prejudgment interest, post-judgment interest, attorneys' fees, and costs/expenses.

WHEREFORE, plaintiff, MODE, prays:

(i)    that process in due form of law according to the practice of this Court may issue against each of the defendants, citing them to appear and answer the foregoing;

(ii)    that judgment be entered on the First Cause of Action (Breach of Contract) against all defendants, as alter egos, jointly and severally, in an amount not less than $2,245,856.59, together with prejudgment interest in an amount of 1.5% per month, post-judgment interest, attorneys' fees, and costs/expenses;

(iii)    that judgment be entered on the Second Cause of Action (Accounting) against all defendants, as alter egos, jointly and severally, in an amount not less than $2,245,856.59, together with prejudgment interest, post-judgment interest, attorneys' fees, and costs/expenses;

(iv)    that judgment be entered on the Third Cause of Action (Quantum Meruit) and Fourth Cause of Action (Unjust Enrichment), in the alternative to the First Cause of Action (Breach of Contract), against all defendants, as alter egos, jointly and severally, in an amount not less than $2,245,856.59, together with prejudgment interest, post-judgment interest, attorneys' fees, and costs/expenses;

(v)    that judgment be entered on the Fifth Cause of Action (Fraudulent Misrepresentation) against all defendants, as alter egos, jointly and severally, in an

amount not less than $2,245,856.59, together with punitive damages, prejudgment interest, post-judgment interest, attorneys' fees, and costs/expenses;

(vi)   that judgment be entered on the Sixth Cause of Action (Fraudulent Conveyance Under N.J.S.A.25:2-25) and Seventh Cause of Action (Fraudulent Conveyance Under N.J.S.A.25:2-27) against all defendants, as alter egos, jointly and severally, in an amount not less than $2,245,856.59, or in the alternative, declaring the fraudulent conveyances void and setting aside the fraudulent conveyances for judgment, together with  punitive damages, pre-judgement interest, post judgement interest, attorneys' fees, and costs/expenses;

(vii)  that judgment be entered on the Eighth Cause of Action (Violation of RICO, 18 U.S.C. § 1962(c)) and Ninth Cause of Action (Conspiracy to Violate RICO, 18 U.S.C. § 1962(d)) against the RICO Defendants (Greenspan, Dhanraj, Linkletter, and Doe), in the alternative,   jointly and severally, in an amount not less than $6,737,569.77 (trebled damages pursuant to 18 U.S.C. § 1964(c)), together with punitive damages, trebled pre-judgement interest, post-judgment interest, attorneys' fees, and costs/expenses; and

(viii) For such other relief as this Court may deem just and proper.

Dated: January 28, 2026
        Montclair, New Jersey

CASEY & BARNETT LLC
*Attorneys for Plaintiff, MODE Transportation, LLC*

By: _____
        Teresa H. Dooley
P.O. Box 43481
Montclair,  NJ 07043
(646) 362-8926
td@caseybarnett.com